UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

SIMON TAUB,                                    Chapter 7
                                               Case No. 10-48155

                    Alleged Debtor.
----------------------------------------------------------------x


# DECISION


Appearances:

David A. Bellon, Esq.                          Esther Newhouse
157-51 26th Avenue                             Pro se
Flushing, NY 11354
Attorney for Chana Taub

Leo Fox, Esq.                                  Alicia Leonhard, Esq.
Law Office of Leo Fox                          Office of the United States Trustee
630 Third Avenue                               271 Cadman Plaza East, Suite 4529
New York, NY 10017                             Brooklyn, NY 11201
Attorney for Simon Taub                        Office of the United States Trustee

Lori Lapin Jones, Esq.                         Ronald J. Friedman, Esq.
Lori Lapin Jones, PLLC                         SilvermanAcompora LLP
98 Cutter Mill Road                            100 Jericho Quadrangle
Suite 201 North                                Suite 300
Great Neck, NY 11021                           Jericho, NY 11753
Chapter 11 Trustee                             Attorney for Chapter 11 Trustee


CARLA E. CRAIG
Chief United States Bankruptcy Judge

Before the Court is the motion of the alleged Debtor, Simon Taub, brought on by order to show cause, seeking the entry of an order dismissing this involuntary Chapter 7 case pursuant to Bankruptcy Code § 303(b) (the "Motion to Dismiss"). Docket No. 4. Chana Taub, one of three petitioning creditors, opposed the Motion to Dismiss on September 1, 2010. Docket No. 7. On September 2, 2010, Mr. Taub filed a reply. Docket No. 8. Also on September 2, 2010, the Court held an evidentiary hearing at which two petitioning creditors, Mr. Taub, and the Chapter 11 Trustee appeared and were heard. For the reasons stated herein, the Court grants the Motion to Dismiss.

Mr. Taub also seeks attorney's fees and sanctions pursuant to Bankruptcy Code § 303(i). This application will not be considered in the context of this emergency motion; however, the Court will retain jurisdiction following the dismissal of the case pursuant to Bankruptcy Code § 349 to consider this request for relief.

Jurisdiction

The Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 1334, and the Eastern District of New York standing order of reference dated August 28, 1986.

Background

*I.*        *The Involuntary Petition*

On August 30, 2010, Chana Taub, her sister, Esther Newhouse, and Katalin Pota, an ex-tenant of real property owned by Mr. Taub (collectively, the "Petitioners"), commenced this case by filing an involuntary Chapter 7 petition against Mr. Taub (the "Petition"). According to the Petition, Ms. Taub, Ms. Newhouse, and Ms. Pota hold claims against Mr. Taub in the respective

amounts of $700,000, $500,000, and $200,000.  Petition, Docket No. 1, at p. 2.  The Petition

characterizes the debts owed by Mr. Taub as "primarily business debts."  *Id.* at p. 1.  The

Petitioners left blank the sections of the Petition that request each petitioner to identify the nature

of her claim.  *Id.* at p. 2.

 Contemporaneously with the Petition, the Petitioners filed a statement pursuant to Local

Bankruptcy Rule 1073-2(b), indicating that "no related case is pending or has been pending at

any time."  E.D.N.Y. LBR 1073-2(b) Statement, Docket No. 1, at pp. 3-4.  However, currently

pending before Judge Stong is the individual Chapter 11 bankruptcy case of Ms. Taub, which she

commenced on July 1, 2008.  Case No. 08-44210, Docket No. 1.  Ms. Newhouse and Mr. Taub,

who is Ms. Taub's estranged husband, are both creditors of Ms. Taub's estate and have appeared

before Judge Stong in nearly all, if not all, of the matters that have arisen in that case.  Because

they bear on the issues before this Court today, the Court will briefly recite relevant portions of

the history of Ms. Taub's related bankruptcy case, although the Court also assumes the parties'

familiarity with that case, as well as the decisions and orders that Judge Stong has issued in its

administration.

## II. *Ms. Taub's Bankruptcy and Pending State Court Cases*

 Mr. Taub and Ms. Taub are presently parties to an equitable distribution action in

Supreme Court, Kings County (the "Equitable Distribution Action"), which was commenced

prior to and stayed by the July 1, 2008 filing of Ms. Taub's Chapter 11 petition.  Case No. 08-

44210, Docket No. 1.  On August 14, 2009, Judge Stong entered an order granting Mr. Taub's

motion for relief from the automatic stay pursuant to Bankruptcy Code § 362(d)(1), to allow Mr.

Taub to proceed in the Equitable Distribution Action to conclusion and entry of judgment, with

enforcement to take place in the Bankruptcy Court (the "Lift Stay Order").  Lift Stay Order, Case

No. 08-44210, Docket No. 317.  Although Ms. Taub filed a Notice of Appeal of the Lift Stay

Order on December 18, 2009, by order entered on July 1, 2010, Judge Carol B. Amon dismissed

the appeal after Ms. Taub withdrew it.  Notice of Appeal, Case No. 08-44210, Docket No. 402;

Final Order of Judge Carol B. Amon, Case No. 08-44210, Docket No. 620.  The record of both

Ms. Taub's case and this case reflect that a trial on the Equitable Distribution Action was

scheduled to commence on August 30, 2010, before Supreme Court Justice Matthew J. D'Emic,

and was to "continue everyday until its completion."  Letter of Justice D'Emic, Case No. 10-

48155, Motion to Dismiss, Exh. D, Docket No. 4.  The filing of this involuntary petition on the

morning of August 30, 2010, stayed the Equitable Distribution Action.

<u>III.</u>     *Appointment of a Chapter 11 Trustee and District Court Appeal*

On April 9, 2010, Judge Stong issued a memorandum decision (the "April 9, 2010

Decision") and entered an order (the "Trustee Order") directing the appointment of a Chapter 11

trustee to operate Ms. Taub's estate.  *In re Taub*, 427 B.R. 208 (Bankr. E.D.N.Y. 2010); Case

No. 08-44210, Docket Nos. 518, 519.  Judge Stong found by clear and convincing evidence that

cause to appoint a trustee existed pursuant to Bankruptcy Code § 1104(a)(2) and (3), and cited in

support of her decision, among other things, the fact that Ms. Taub's estate was not current on

administrative expenses; that Ms. Taub had negative relationships with certain estate

professionals, which had impeded progress towards reorganization; that a great degree of

acrimony existed between Ms. Taub and her creditors; and that conflicts of interest impaired Ms.

Taub's ability to fulfill her fiduciary duties to creditors.  *Taub*, 427 B.R. at 227-32.  On April 13,

2010, Judge Stong entered an order appointing Lori Lapin Jones, Esq., as the Chapter 11 trustee.

Case No. 08-44210, Docket No. 524.  On April 28, 2010, after a contested hearing, the Court

entered an order appointing SilvermanAcampora LLP as attorneys for the Chapter 11 trustee.

Case No. 08-44210, Docket No. 543.

By Notices of Appeal dated April 16, 2010, and April 23, 2010, Ms. Taub and Ms.

Newhouse appealed the Trustee Order to the District Court.  Case No. 08-44210, Docket Nos.

529, 540.  On May 13, 2010, Judge Stong entered an order denying a motion filed by Ms. Taub

to stay the effect of the Trustee Order pending the appeals.  Case No. 08-44210, Docket No. 568.

And on August 30, 2010, District Judge Carol Amon issued a Memorandum Decision and Order

denying both appeals.  *Taub v. Adams*, Case No. 10-cv-02600-CBA (E.D.N.Y. Aug. 30, 2010),

ECF No. 32.  As a result, the Trustee Order continues in effect, and vests the Chapter 11 Trustee

with all the rights, duties, and powers of a trustee appointed under the Bankruptcy Code,

including authorization to take possession of the Ms. Taub's property, to operate and manage Ms.

Taub's business, and to perform all of the duties of a trustee prescribed in Bankruptcy Code §

1106(a).

*IV.*      *The Motion to Dismiss the Involuntary Petition*

On August 31, 2010, Mr. Taub moved by order to show cause to dismiss this case.

Motion to Dismiss, Case No. 10-48155, Docket No. 4.  Mr. Taub argues that the petition is

defective on its face because none of the Petitioners hold claims that are not the subject of a bona

fide dispute as to liability and amount.  *Id.* at 3.  Mr. Taub asserts that all of the debts allegedly

owed by him to Ms. Taub are contingent and disputed, that he has never advanced funds to Ms.

Newhouse, and that he does not owe Ms. Pota anything.  *Id.* at 3-4.  Rather, Mr. Taub asserts that

any funds advanced by Ms. Newhouse to Ms. Taub "were stolen from me[,]" and that Ms. Pota

owes Mr. Taub at least $36,000 in rent arrears. *Id.* Mr. Taub argues that the Court should award sanctions against the Petitioners because "[t]he sole purpose of this filing was to interrupt and to delay the orderly progress of the [Equitable Distribution Action] by three persons who knew that this petition has no merit and who filed solely for the purposes of incurring delays and preventing the disposition of the [Equitable Distribution Action]." *Id.* at 5. Mr. Taub also argues that as a result of the appointment of the Chapter 11 trustee, Ms. Taub lacks standing to assert claims against Mr. Taub on behalf of her bankruptcy estate. Memorandum of Law, Case No. 10-48155, Docket No. 4, at p. 5.

Based on these facts, on August 31, 2010, this Court signed and entered an order directing the Petitioners to appear at a hearing on September 2, 2010, and show cause why this Court should not issue an order dismissing the involuntary petition pursuant to § 303 of the Bankruptcy Code, and assess sanctions against the Petitioners (the "OSC"). OSC, Case No. 10-48155, Docket No. 5. The OSC directed overnight service of the Motion to Dismiss, set an opposition deadline of September 1, 2010, and scheduled the September 2, 2010 hearing. *Id.* On August 31, 2010, Mr. Taub filed an affidavit of service reflecting that he had served the Motion to Dismiss by overnight mail on each of the Petitioners, the Chapter 11 trustee, and the Office of the United States Trustee. Case No. 10-48155, Docket No. 6.

On September 1, 2010, Ms. Taub timely filed an objection to the OSC in which she objected to this Court's proceeding on shortened notice, and disputed Mr. Taub's assertions. Objection, Case No. 10-48144, Docket No. 7. Ms. Taub stated that the $700,000 debt owed to her arises from "rents [Mr. Taub] embezzled from her properties since 2005." *Id.* at 2. Ms. Taub explained that because the Chapter 11 trustee has "abrogated her rights regarding these funds,

[Ms. Taub] is pursuing what is rightfully hers." *Id.* at 2-3.  Ms. Taub also referred to an order

entered in the Equitable Distribution Action on October 30, 2007, which awarded Ms. Taub

"interim support of $350 - per week to be paid [by Mr. Taub,]" as well as an order entered in the

Equitable Distribution Action on March 2, 2010, which provided that "[e]ffective March 8, 2010,

Simon Taub shall pay interim support of $500/ wk thru Plaintiff's counsel: $350/wk = current

support + $150/wk against arrears . . . ."  Objection, Exh. B, Case No. 10-48155, Docket No. 7.

Ms. Taub argues that "[t]hese support obligations are not part of the Trustee's jurisdiction, and

[that she] has a right to demand those payments."  Objection, at p. 3.

    With respect to Ms. Newhouse's claim, Ms. Taub asserted that Mr. Taub "should repay

[Ms. Newhouse] for funds she lent [Ms. Taub]" during the pendency of their various legal

disputes.  *Id.* at 3.  On this basis, Ms. Taub asserts that "[Ms.] Newhouse has a legitimate claim

against [Mr. Taub.]"  *Id.*

    With respect to Ms. Pota, Ms. Taub asserted that in his capacity as Ms. Pota's landlord,

Mr. Taub installed surveillance cameras to monitor Ms. Pota's comings and goings, and that

when she was away, he entered her apartment and "stole her artwork and forced her to spend

additional funds to repair her door and lock."  *Id.* at 3.  Ms. Taub also asserted that Mr. Taub

"stole [Ms. Pota's] valuables from [a] storage space" that she rented.  *Id.* at 3.  Ms. Taub did not

explain, and the record does not reflect, how the claimed amount of $200,000 was calculated.

    On September 2, 2010, Mr. Taub filed a reply to Ms. Taub's opposition.  Case No. 10-

48155, Docket No. 8.  Mr. Taub asserted that the March 10, 2010 state court order "does not

quantify any unpaid debt or arrears[,]" and that he has "paid these amounts as ordered" to Ms.

Taub.  *Id.* at ¶ 1.  Mr. Taub reemphasized his contention that he has advanced significant funds

towards the utility bills for Ms. Taub's residence, and contends that "any 'support claim' [of Ms. Taub] is contingent at this point and the subject of a bona fide dispute as to liability, and amount." *Id.* at ¶ 2.

## VIII.    *The Evidentiary Hearing*

On September 2, 2010, the Court held an evidentiary hearing at which Ms. Taub, Ms. Newhouse, Mr. Taub, the Chapter 11 trustee, her counsel, and the Office of the United States Trustee appeared and were heard. Although she filed the Petition *pro se*, Ms. Taub appeared at the hearing by counsel. Ms. Pota did not appear at the hearing. During the course of the hearing, the Court heard the testimony of Ms. Taub, Mr. Taub, and Ms. Newhouse, and received multiple exhibits in evidence. The Court heard the arguments of Mr. Taub and the Chapter 11 trustee in support of the Motion to Dismiss, and the arguments of Ms. Taub and Ms. Newhouse in opposition.

The testimony, argument, and evidence submitted by Ms. Taub shows that her $700,000 claim arises from multiple sources. A significant component of her claim is based on expenses related to the properties titled in her name, including rental income that Mr. Taub allegedly diverted from her properties and expenses associated with administering her properties. Another component of the claim arises from support obligations owed by Mr. Taub that he has allegedly not paid. To support this component of her claim, Ms. Taub submitted into evidence several orders entered in state court, which directed Mr. Taub to pay Ms. Taub weekly amounts in the nature of support. Ms. Taub acknowledged that Mr. Taub made "sporadic" support payments to her under these orders, but claimed that he had missed many payments. Tr.[1] at 40-41. Ms. Taub did not provide testimony or

---

[1] "Tr." refers to the transcript of the hearing held on September 20, 2010.

evidence showing that Mr. Taub owed a particular amount related to the support orders.  At one point, she estimated that the arrears approximated $30,000, and later she asserted that Mr. Taub owed her $32,000.  Tr. at 42, 228.  Ms. Taub also contended that Mr. Taub had misappropriated her personal property, including more than $1 million in stocks and other funds held in bank accounts.  Objection, Case No. 10-48144, Docket No. 7, p. 3.  Ms. Taub stated that she believed that her total claim against Mr. Taub is greater than $700,000, and explained that she arrived at the $700,000 figure after speaking with acquaintances about the Petition, who advised her to assert a claim for less than the amount owed her.  Tr. at 86.

Mr. Taub provided testimony, argument, and evidence responsive to each component of Ms. Taub's claim.  First, Mr. Taub challenged Ms. Taub's standing to assert any claim that constituted property of Ms. Taub's bankruptcy estate in an involuntary petition against him.  The Chapter 11 trustee joined in this argument, and stated that it was her position that Ms. Taub's assertion of any claim that constituted estate property violated the automatic stay.  Tr. at 71.  She noted that she had not abandoned any claims with respect to property of Ms. Taub's estate.  Tr. at 60.  The Chapter 11 trustee also stated that she did not view support claims as estate property.  *Id*.

With respect to the support payments, Mr. Taub testified that between June 2007 and September 2010, he paid Ms. Taub at least $73,000 in support and other payments, including expenses associated with utilities at Ms. Taub's properties.  Tr. at 169-170.  Mr. Taub introduced into evidence copies of checks (Tr. at 171) and utility company invoices (Tr. at 173) to support these assertions, although Ms. Taub and Ms. Newhouse denied the authenticity of these documents and denied that Mr. Taub had paid the amounts shown on them.  Tr. at 27, 68.  Mr. Taub also argued that he had a right to set off rental income Ms. Taub collected from properties titled in her

name against his unpaid support obligations, because without rental income he had been required to pay many expenses for properties in which Ms. Taub had an interest out-of-pocket.  Tr. at 216.  Mr. Taub offered into evidence portions of a transcript from a hearing in state court on July 1, 2008, containing colloquy between Justice Carolyn Demarest and Ms. Taub's matrimonial counsel, indicating that these issues would be resolved in the context of the Equitable Distribution Action. Tr. at 178.

Ms. Newhouse testified that her claim against Mr. Taub is based upon amounts that she advanced to Ms. Taub when Mr. Taub failed to pay his support obligations to Ms. Taub.  Tr. at 25-26.  Ms. Newhouse argued that because Ms. Taub and Mr. Taub are still married, she has a right to recover any funds that she loaned to Ms. Taub from Mr. Taub.  Tr. at 29-30, 33, 35-36.  Ms. Newhouse presented no documentary evidence to substantiate her allegation that the funds she advanced to Ms. Taub amount to $500,000.

Ms. Pota did not appear at the hearing and presented no documentary evidence to support her claim.  During her argument, Ms. Newhouse asserted that Mr. Taub had stolen valuable items from Ms. Pota, and that police reports had been filed to document the thefts.  Tr. at 33.  Mr. Taub contended that he did not owe Ms. Pota funds, and disputed that he had stolen her property.  Mr. Taub asserted that Ms. Pota owed him rent arrears in relation to her occupancy of an apartment in one of his properties.  He submitted evidence showing that he paid fees to store Ms. Pota's personal belongings, the authenticity of which Ms. Newhouse also disputed.  Tr. at 9, 221, 241.

Discussion

*I.*      *Notice of the Involuntary Petition and Hearing on Order to Show Cause*

Several rules of bankruptcy procedure affect the timing of the hearing and disposition of a

petition in an involuntary case.  First, Federal Rule of Bankruptcy Procedure 1013(a) provides that

the court "shall determine the issues of a contested petition at the earliest practicable time and

forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order."  FED.

R. BANKR. P. 1013(a).  The purpose of this rule is "the avoidance, to the extent possible, of the

consequences of the involuntary petition in the absence of the entry of an order for relief[,]" which

may include "loss of credit standing, a chilling effect on the willingness of creditors and third

parties to transact business in the ordinary course, and possible public embarrassment."  *In re*

*Immudyne, Inc.*, 218 B.R. 860, 862 (Bankr. S.D.Tex. 1998) (*citing In re Reid*, 773 F.2d 945 (7th

Cir. 1985)).  The rule "recognizes that the interests of both the debtor and the creditors are best

served by prompt resolution of the issues raised by an involuntary bankruptcy petition."  9 COLLIER

ON BANKRUPTCY ¶ 1013[02] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

Federal Rule of Bankruptcy Procedure 1011(b) also applies to motions in involuntary cases,

and provides that the presentation of a defense to an involuntary petition must conform to Rule 12

of the Federal Rules of Civil Procedure.  Fed. R. Bankr. P. 1011(b).  Rule 12(b), in turn, permits a

party to assert by motion the defense that the petitioners failed to state a claim upon which relief can

be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under subsection (b) of Rule 12 is a

proper procedural mechanism to challenge petitioning creditors' standing due to bona fide disputes

with respect to the asserted claims, or where the debtor disputes that the petitioners hold claims

against it.  *See Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111 (2d Cir.

2003) (motion to dismiss under Rule 12(b)(6)); *In re B.B.S.I., Ltd.*, 81 B.R. 227, 229 (Bankr. E.D.N.Y. 1988) (motion to dismiss under Rule 12(b)(1)); *Rezko v. Sirazi*, No. 08 C 5433, 2009 WL 1507660, at *2 (N.D. Ill. May 29, 2009) (motion to dismiss under Rule 12(b)(6))*.*  Federal Rule of Bankruptcy Procedure 9006 permits the Court, with certain exceptions not relevant here, to reduce the notice periods imposed by these rules.  Fed. R. Bankr. P. 9006(c)(1), (2).  Likewise, both the Bankruptcy Code and the Local Bankruptcy Rules for the Eastern District of New York contemplate that parties may move by order to show cause, and that the Court, in its discretion, may determine to hold a hearing on shortened notice.  E.D.N.Y. LBR 9077-1(a) (effective Dec. 1, 2009).  Bankruptcy Code § 105(a) vests the Bankruptcy Court with the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," and provides that the Court may, on the request of a party in interest, "prescribe such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically."  11 U.S.C. § 105(a), (d)(2).

There is one circumstance in which a Bankruptcy Court must "pause before [conducting a] hearing on the merits of an involuntary petition."  *Liberty Tool, & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1071 (9th Cir. 2002).  This circumstance derives from the interplay between Bankruptcy Code § 303(c) and subsection (b) of Bankruptcy Rule 1003. Bankruptcy Code § 303(c) permits non-petitioning creditors holding non-contingent, unsecured claims to join in the involuntary petition after it is filed but "before the case is dismissed or relief is ordered[.]"  11 U.S.C. § 303(c).  In subsection (b), Bankruptcy Rule 1003 provides that "[i]f the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or

more creditors, . . . the court shall afford a *reasonable opportunity* for other creditors to join in the

petition before a hearing is held thereon." Fed. R. Bankr. P. 1003(b) (emphasis added).

By its terms, Bankruptcy Rule 1003(b) is operative only where the involuntary petition was

commenced by fewer than three petitioners in reliance on Bankruptcy Code § 303(b)(2), and, in its

answer, the alleged debtor asserts the existence of 12 or more creditors in accordance with

Bankruptcy Rule 1003(b). *Id.* As a result, "[i]f there are three or more petitioners, then the rules do

not require a 'reasonable opportunity' to join[,]" but rather leave the timing of a hearing on the

involuntary petition in the discretion of the Bankruptcy Court. *Vortex Fishing Sys.*, 277 F.3d at

1071. Nor does Bankruptcy Rule 1003 apply when the alleged debtor seeks dismissal of the

petition on the basis that the petitioning creditors are not qualified under § 303(b) because their

claims are subject to a bona fide dispute.

During the evidentiary hearing, Ms. Taub and Ms. Newhouse advanced two arguments

relating to the scheduling of the hearing. The first was that the OSC entered on August 31, 2010,

which directed opposition to be filed and served by September 1, 2010, and scheduled the

September 2, 2010, hearing on the Motion to Dismiss, did not provide the Petitioners sufficient time

to prepare documentation to substantiate their claims against Mr. Taub. Secondly, Ms. Taub

argued that this Court should provide a window of time for non-petitioning creditors holding

unsecured claims to join the Petition. Neither Ms. Taub nor Ms. Newhouse identified any creditors

who intended to join the Petition; the testimony of Ms. Taub only revealed that she believed that

Mr. Taub had other creditors, including mortgagees holding claims related to her properties.

With respect to the first argument, the Court declines to grant additional time to the

Petitioners to respond to the Motion to Dismiss. Courts have noted that even in the absence of an

order for relief, the commencement of an involuntary bankruptcy case may have adverse consequences for the alleged debtor. *Immudyne*, 218 B.R. at 862.  Petitioning creditors, who sign the petition under the penalty of perjury, should have the documentation to support their claims before taking this serious step.  Recognizing this, Bankruptcy Rule 1013 directs the Court to determine the issues presented in the Petition at the earliest practicable time.  In view of this, and in view of the totality of the circumstances presented by this case and Ms. Taub's related bankruptcy case, as well as the pending Equitable Distribution Action, and consequences imposed on parties to that action as well as the parties-in-interest to Ms. Taub's bankruptcy case when the Equitable Distribution Action was stayed by the filing of this petition, a swift hearing was necessary and appropriate.

With respect to the second argument, the Court concludes that it is not necessary or appropriate to provide any additional time for creditors to join the Petition.  Bankruptcy Rule 1003(b) is not applicable here because the Petition was filed by three petitioning creditors, and the Motion to Dismiss, to the extent it may be construed as an answer, does not "aver[] the existence of 12 or more creditors[,]," but rather argues that the Petitioners do not hold claims against Mr. Taub that would entitle them to commence this case.   Fed. R. Bankr. P. 1003(b).  As a result, there is no requirement that non-petitioning creditors be afforded a "reasonable opportunity" to join the Petition. *Vortex Fishing Sys.*, 277 F.3d at 1071.  The Petitioners' request to continue this hearing for that purpose is denied.

II.      _Standing of Chana Taub to Commence Involuntary Case_

Bankruptcy Code § 323 provides that the trustee in a bankruptcy case "is the representative

of the estate." 11 U.S.C. § 323(a).  As one Court explained:

> Under the Code, the debtor remains the debtor in possession unless and
> until a trustee is appointed by court order under Section 1104.  When a
> trustee is appointed, the debtor is no longer a debtor "in possession" –
> the trustee succeeds to all the rights and properties of the debtor, which
> is thereby displaced from its property interests.  The appointment of a
> trustee effects a statutory transfer or assignment of the debtor's property,
> including its contractual relationships, from the debtor to the trustee.

_In re Footstar, Inc._, 323 B.R. 566, 571 (Bankr. S.D.N.Y. 2005).  For this reason, once a Chapter 11

trustee is appointed, a debtor lacks standing to bring an adversary proceeding, or otherwise to assert

claims, on the estate's behalf.  _Rooney v. Thorson (In re Dawnwood Properties/78)_, 209 F.3d 114,

116 (2d Cir. 2000).

On the other hand, not all property held in a Debtor's name is property of the estate subject

to the administration of the Chapter 11 trustee.  An individual Chapter 11 debtor is entitled to claim

exemptions, and property claimed as exempt is not property of the estate if the exemption is

allowed.  _Van Buren Indus. Investors. v Henderson (In re Henderson_), 341 B.R. 783, 790 (M.D.

Fla. 2006).  Pursuant to § 522(b)(1) of the Bankruptcy Code and New York's Debtor & Creditor

Law § 284, New York law defines New York residents' bankruptcy exemptions.  N.Y. Debt. &

Cred. ("DCL") § 284; _In re Bradley_, 369 B.R. 147, 153 (Bankr. S.D.N.Y. 2007).  Included among

the property that may be exempt is "alimony, support, or separate maintenance, to the extent

reasonably necessary for the support of the debtor and any dependant of the debtor."  DCL §

282(iii)(2)(d).  A debtor may also claim a homestead exemption in specified types of real property

owned and occupied as a principal residence, in an amount not to exceed $50,000 above liens and

encumbrances.  N.Y. C.P.L.R. § 5206(a) (McKinney 2010).

Mr. Taub argues that because Judge Stong appointed a Chapter 11 trustee in Ms. Taub's

bankruptcy case, Ms. Taub lacks standing to commence an involuntary petition against him.  To the

extent that Ms. Taub's alleged $700,000 claim against Mr. Taub is attributable to claims that are

property of the estate in Ms. Taub's bankruptcy case, Mr. Taub is correct.  However, Ms. Taub also

claims that she is owed support arrears, which may be exempt property, if found to be reasonably

necessary to her support or to the support of any dependant.  Ms. Taub may also be eligible to claim

a homestead exemption pursuant to CPLR § 5206, and it is conceivable that one or more of her

claims may relate to property that would be subject to that exemption (though how precisely this

type of claim would arise has not been articulated by Ms. Taub or her counsel).  The Court is

persuaded that a claim for exempt payments, if not contingent as to liability or the subject of a bona

fide dispute as to liability or amount, would be sufficient to confer standing to commence an

involuntary case.  Accordingly, it is appropriate to turn to the merits of Mr. Taub's motion to

dismiss.

III.    _Bankruptcy Code § 303: Involuntary Cases_

Where three or more entities commence an involuntary Chapter 7 case, Bankruptcy Code

§ 303(b)(1) provides the operative framework.  In that section, the Bankruptcy Code provides that:

> An involuntary case against a person is commenced by the filing with the bankruptcy
> court of a petition under chapter 7 or 11 of this title—
>
> (1)    by three or more entities, each of which is either a holder of a claim against such
>        person that is not contingent as to liability or the subject of a bona fide dispute
>        as to liability or amount . . . , if such noncontingent, undisputed claims aggregate

at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims . . . .

11 U.S.C. § 303.

The net effect of Bankruptcy Code § 303(b)(1) is that, "in order to qualify as a petitioning creditor, the creditor must hold a claim that is 'not contingent as to liability or the subject of a bona fide dispute as to liability or amount.' A creditor must satisfy both prongs of this test; the claim must not be subject to a bona fide dispute as to *either* liability or as to amount." *In re Aminian*, No. 07-12957 (AJG), 2008 WL 793574, at *2 (Bankr. S.D.N.Y. Mar. 25, 2008) (*quoting* 11 U.S.C. § 303).

## IV.    Burden Shifting Framework

*Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111 (2d Cir. 2003) articulates the standard in the Second Circuit with respect to § 303(b)(1).[2] Under the test adopted in *BDC 56 LLC*, the petitioning creditors bear the initial burden of coming forward with evidence to "establish a prima facie case that no bona fide dispute exists." *BDC 56 LLC*, 330 F.3d at 118. "Once a prima facie case has been established, the burden shifts to the debtor to demonstrate the existence of a bona fide dispute." *Id.*

## V.    Requirement of No Bona Fide Dispute as to Liability

Under *BDC 56 LLC*, the Court must determine whether a debt owed to a petitioning creditor is subject to a "bona fide dispute" as to liability by applying an objective test. The objective test

---

[2] *BDC 56 LLC* has been overruled to the extent that it construed the requirement that a petitioning creditor's claim not be subject to a bona fide dispute as a prerequisite to subject matter jurisdiction. *Adams v. Zarnel (In re Zarnel)*, Nos. 07-0090-bk(L), 07-0091-bk(Con), 07-0092-bk(Con), 11 07-0097-bk(Con), 07-0098-bk(Con), 07-0099-bk(Con), 2010 WL 3341428 (2d Cir. Aug. 26, 2010). *BDC 56 LLC* remains good authority for the other matters decided therein.

asks whether "there is an objective basis for either a factual or a legal dispute as to the validity of [the] debt." *Id*. at 117 (alteration in original). The Court's goal is "to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute." *Id*. at 118. *See also In re Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 945 (6th Cir. 2007)(*quoting In re Lough*, 57 B.R. 993, 997 (Bankr. E.D. Mich. 1986)). "Congress has made clear that it intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal." *DSC*, 486 F.3d at 945 (internal quotation omitted).

Here, the Court concludes that with respect to Ms. Taub's $700,000 claim, the Petitioners have not met their burden of coming forward with evidence to show that no bona fide dispute exists as to Mr. Taub's liability to Ms. Taub. First of all, as to the components of this claim which are based on rents allegedly diverted by Mr. Taub from real property titled in Ms. Taub's name, or any other claims that constitute property of Ms. Taub's bankruptcy estate, Ms. Taub lacks standing to assert these claims against Mr. Taub; these claims may be asserted only by the Chapter 11 trustee. Ms. Taub's lack of standing constitutes a defense to the assertion of these claims by her, at a minimum giving rise to a bona fide dispute as to Mr. Taub's liability to her on these claims.

As to the components of Ms. Taub's claim that are based upon alleged support arrears, the evidence presented also shows that there is an objective basis to conclude that there is a legal dispute as to Mr. Taub's liability to Ms. Taub. Mr. Taub has asserted colorable defenses to Ms. Taub's support claim. He introduced into evidence copies of checks which he contends represents a substantial portion of the support payments called for by state court orders which he contended totalled approximately $46,400. Tr. at 126, 171; Debtor Ex. B; Case No. 10-48155, Docket No. 10.

Mr. Taub also asserted a right to set-off and a right to reimbursement for other expenses paid on her behalf and for rents collected by her.  Reply, Case No. 10-48155, Docket No. 10; Debtor's Ex. B. Mr. Taub introduced into evidence a portion of a transcript of a hearing that took place in state court on July 1, 2008, which illustrates the dispute as to support, and in which the judge stated that the issue of liability for support and the amount, if any, that Mr. Taub would be entitled to offset, would be determined at trial in the Equitable Distribution Action.  Debtor's Ex. E.

At trial, and in a post-trial submission, Ms. Taub contended that the checks introduced into evidence by Mr. Taub purportedly showing support payments are forgeries, and that Mr. Taub is not entitled to offset rents collected by Ms. Taub against his interim support obligations.  She also argued that the fact Mr. Taub's attorney has not objected to entries in the operating statements filed by Ms. Taub in her bankruptcy case showing support payments owed by Mr. Taub should be interpreted as a concession that these amounts are outstanding.  As to the latter argument, the Court declines to draw this conclusion.  Other parties in interest in a bankruptcy case are not bound by statements made by the debtor in operating statements, and have no obligation to review these statements, or to object to them.  As to the former argument, Ms. Taub's contentions underscore that the respective rights and obligations of the parties to the Equitable Distribution Action are vigorously disputed, including the extent, if any, of Mr. Taub's outstanding support obligations.

In sum, the amount of support paid by Mr. Taub; whether Mr. Taub was entitled to setoff or reimbursement; and Mr. and Ms. Taub's respective rights under principles of equitable distribution and under interim support orders entered by the state court, are matters which will be determined by the state court in the Equitable Distribution Action. Until such time as these matters are resolved by the state court, Ms. Taub's claim against Mr. Taub is subject to a bona fide dispute as to liability. For these reasons, the Court concludes that Ms. Taub is not an eligible petitioning creditor for the purposes of Bankruptcy Code § 303(b).

Ms. Newhouse has listed a claim against Mr. Taub in the amount of $500,000, and asserts that she is entitled to reimbursement from Mr. Taub for loans that she extended to Ms. Taub. Mr. Taub denies that Ms. Newhouse loaned him funds, or that he is otherwise indebted to her. It is clear that an objective factual and legal dispute exists with respect to Mr. Taub's liability to Ms. Newhouse. No evidence whatsoever supports the contention that Mr. Taub owes a debt to Ms. Newhouse. No contention is made that Mr. Taub has ever borrowed money from Ms. Newhouse, nor, so far as the record shows, has he agreed to guarantee Ms. Newhouse's loans to Ms. Taub. On this record, the Court finds that the Petitioners have not met their burden of coming forward with evidence that Ms. Newhouse's claim is not subject to a bona fide dispute as to liability, and concludes that Ms. Newhouse is not qualified to be a Petitioning Creditor under Bankruptcy Code § 303.

Ms. Pota asserts a $200,000 claim against Mr. Taub arising from alleged vandalism and property theft. The Petitioners have not supplied any evidence to support the allegation that such theft occurred; nor have they come forward with any calculations justifying the amount of the claim. Mr. Taub denies that he owes any debt to Ms. Pota. The Court concludes that the Petitioners have

not met their burden of coming forward with evidence that Ms. Pota's claim is not subject to a bona fide dispute as to liability. As a result, the Court concludes that Ms. Pota is not an eligible petitioning creditor for the purposes of Bankruptcy Code § 303(b).

*VI.*      *Requirement of No Bona Fide Dispute as to Amount*

The 2005 amendments enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act amended § 303 to require that a petitioning creditor's claim cannot be subject to a bona fide dispute as to liability *or amount*. The result of this amendment is that "'disputes as to amount–not just liability–are sufficient to create a bona fide dispute.'" *In re Mountain Dairies, Inc.*, 372 B.R. 623, 634 (Bankr. S.D.N.Y. 2007) (*quoting* 3 COLLIER ON BANKRUPTCY ¶ 303.30[2][b] (15 rev. ed. 2006)).

In the Petition, Ms. Taub asserts a claim in the amount of $700,000 against Mr. Taub. For the reasons discussed above, the Court concludes that there is an objective dispute as to the amount of Ms. Taub's claim against Mr. Taub. Indeed, the record in this case clearly establishes that Ms. Taub does <u>not</u> hold a $700,000 claim against Mr. Taub, because the bulk of her claims, relating to allegedly diverted rents or misappropriation of property, are claims which belong to the Chapter 11 trustee, and which Ms. Taub therefore lacks standing to assert. Mr. Taub also disputes the amount he owes Ms. Taub for support. All of these issues are before the state court in the Equitable Distribution Action, and will be resolved by the trial. For these reasons, the Court concludes that Ms. Taub is not qualified to be a petitioning creditor for the purposes of Bankruptcy Code § 303, because her claim is subject to a bona fide dispute as to amount as well as liability.[3]

---

[3] Some bankruptcy courts have found that any dispute as to the amount of a petitioning creditor's claim renders that claim subject to a bona fide dispute as to amount. *In re Orlinksy*, No. 06-15417-BKC-RAM, 2007 WL 1240207, at *1 (Bankr. S.D. Fla. Apr. 24, 2007). *See also Mountain Dairies, Inc.*, 372 B.R. at 634 ("'[A]ny dispute

Ms. Newhouse's and Ms. Pota's claims are also unsupported by the record. There is no evidence of any obligation owed by Mr. Taub to Ms. Newhouse or to Ms. Pota. The Court concludes that these claims are also subject to a bona fide dispute as to amount, and thus they are not qualified to be petitioning creditors for the purposes of Bankruptcy Code § 303.

## VII.    *Entitlement to Fees Under Bankruptcy Code § 303(i)*

Mr. Taub has requested attorneys fees and sanctions pursuant to Bankruptcy Code § 303(i). That section provides that if the Court dismisses an involuntary petition under § 303, other than on consent of the petitioning creditors and the debtor, and if the debtor does not waive its right to collect fees, then the court may grant judgment "(1) against the petitioners and in favor of the debtor for [] costs or [] a reasonable attorney's fee; or (2) against any petitioner that filed the petition in bad faith, for [] any damages proximately caused by such filing or [] punitive damages." 11 U.S.C. § 303(i).

This request will not be determined in the context of this emergency motion. If Mr. Taub wishes to pursue this request for relief, he is directed to contact Judge Stong's chambers to schedule a further hearing thereon.

---

regarding [] amount that arises from the same transaction and is directly related to the underlying claim should render the claim subject to a *bona fide* dispute.'") (*quoting In re Euro-American Lodging Corp.*, 357 B.R. 700, 712 n.8 (Bankr. S.D.N.Y. 2007)); *In re Regional Anesthesia Assocs.*, 360 B.R. 466, 477 (Bankr. W.D. Pa. 2007) (same). Other bankruptcy courts conclude that a bona fide dispute as to amount is not relevant unless it has the potential to reduce the total of the petitioner's claim below the statutory threshold. *In re DemirCo Holdings, Inc.*, No. 06-70122, 2006 WL 1663237, at *3 (Bankr. C.D. Ill. 2006). During the hearing, Ms. Taub argued that the portion of her $700,000 claim arising from unpaid support obligations constitutes an unsecured, noncontingent, undisputed claim that exceeds the statutory threshold for eligibility under Bankruptcy Code § 303. However, for the reasons discussed herein, the Court concludes that there is no unsecured, noncontingent, undisputed claim in excess of $13,475 owed by Mr. Taub to Ms. Taub, and therefore that Ms. Taub is not an eligible petitioning creditor for the purposes of § 303 under either interpretation of the statute.

### Conclusion

For the reasons stated herein, and based on the entire record, the Court grants the Motion to Dismiss, and will enter a separate order dismissing this case.



Dated: Brooklyn, New York
September 7, 2010

_____
**Carla E. Craig**
**United States Bankruptcy Judge**